KING, Estate of In Re; McDONALD, Plaintiff-Appellee, v. CALHOUN, Jr., Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21027.   Decided March 28, 1949.

Frank Uible, Cleveland, for plaintiff-appellee.
Garfield, Baldwin, Jameson, Hope & Ulrich, Cleveland, for defendant-appellant.

**OPINION**

By SKEEL, J:
This cause comes to this court on questions of law from a final order of the Probate Court of Cuyahoga County, the action being one for concealing assets under §10506-67 GC.

The deceased prior to his death had been associated with Jo C. Calhoun Jr. in a business venture. Their relationship began in about 1930 when Calhoun conceived the plan of organizing a company to furnish auditing service and business counsel to small businesses. The result was the incorporation of Business Management Inc. Four men, one of whom was Mr. King, became associated with Calhoun in this enterprise. King, prior to this time, was an employee in the Water Department of the City of Cleveland. The plan was for Calhoun to supply the business and the others were to service such accounts in making audits and then advising any business changes that such audits disclosed to be advisable.

The business continued upon this plan until 1936. By this time three of the original men associated in the business of Business Management Inc had withdrawn, leaving King and Calhoun as the sole owners. Inasmuch as it then became apparent that audits that were made in furtherance of servicing the business accounts of the company had to be signed by a certified public accountant individually, Calhoun and King began to carry on the business under the name of W. Leslie King and Company, and while Business Management Inc., was not dissolved, yet its corporate powers were no longer used in conducting the business.

Thereafter, Calhoun continued to procure accounts and King to do the auditing on such new accounts, in addition to continuing to work on the accounts that were formerly serviced as the business of Business Management Inc. The business continued under the name of W. Leslie King & Company from 1936 to January 1, 1944. King died on that date.

The evidence discloses that after the name of the venture had been changed to W. Leslie King & Company, Calhoun continued to share in the profits of the company, at first not to any great extent, but as the business increased and the income would warrant such payment, King and Calhoun would go over the receipts and agree upon the amount Calhoun should receive. There seems also to be no controversy but that it was agreed that the accounts secured to be serviced by W. Leslie King & Company should belong to the one who procured the business. During the last two years before the death of King, the amount paid to Calhoun seemed to show that they, Calhoun and King, had agreed that Calhoun should be paid for his services to the business at the rate of $250.00 per month.

The record further shows that during the last six months of 1943 King became sick and was unable to do any work necessary to audit and service the accounts. During this time

an auditor, Meyers by name, was employed to do the accounting work and that Calhoun agreed during that period not to withdraw money from the business.

Upon the death of King on January 1, 1944, his wife was appointed Executrix of her husband's estate and Calhoun was employed by her as her attorney.

Shortly after her appointment as Executrix, she gave to Calhoun checks in the total amount of $1873.93 received from customers of W. Leslie King & Company. This money was expended by him for the following purposes:

$900.00 to one of the business customers of W. Leslie King & Company, as per agreement with King; and the balance to himself to make up in part the $250.00 per month which he had not received for the last half of 1943.

Calhoun admitted that this amount was not included in the final account which he drew for the Executrix and by her filed in the estate of her husband.

After the death of King, Calhoun carried on the business under the name of W. Leslie King & Company, and by the reports which he furnished the income and expenses for the years in which the business was operated by Calhoun were as follows:

| "Year | Income | Expenses |
|---|---|---|
| 1943 | 1,873.93 | 900.00 |
| 1944 | 14,584.86 | 10,178.49 |
| 1945 | 16,820.50 | 12,293.04 |
| 1946 | 7,772.67 | 4,758.09 |
| Total Income | 41,051.96 | |
| Total Expenses | 28,129.62 | |
| Net Income | 12,922.34" | |

In the expenses as thus recorded, there was included for the year 1944, $1700.00 as being returned to a client as per agreement with King. The same item in the same amount was included for the year 1945, plus $1000.00 extra compensation to A. Z. Meyers, the auditor employed by Calhoun. In 1946 there was included $900.00 paid back to a client on the same basis as the $1700.00 item in 1944 and 1945, and also $612.27 as extra compensation to Meyers. The total of these expenditures was $6,812.67. These claims of expenses were not allowed by the trial court.

The complainant also testified that he as Administrator De Bonis Non with Will Annexed, sold the business to Meyers for $2000.00 in June or July, 1946.

The trial court at the conclusion of the evidence entered the following judgment:

"This matter coming on to be heard on the 29th day of November, 1946, and from the testimony, the exhibits and the evidence, the Court finds that the said Jo C. Calhoun Jr., the person against whom this complaint was filed, is "guilty" of having in his possession the sum of $19,743.99 and the shares of stock which were turned over to him by Mrs. King which are assets of the estate of William Leslie King, deceased.

The Court therefore orders, adjudges and decrees that Jo C. Calhoun Jr. shall pay over the sum of $19,743.99 together with the shares of stock which were turned over to him by the said Mrs. King to T. F. McDonald, Administrator de bonis non w. w. a. of the estate of William Leslie King, deceased.

The Court further finds that the complainee also pay the costs of this proceeding taxed at $————.''

The errors complained of are as follows:

"1. The finding and judgment are contrary to law, because there were absolutely no ultimate facts anywhere in the evidence to prove, or from which an inference could be drawn, that Jo C. Calhoun Jr., has concealed, embezzled or conveyed away moneys, goods, chattels, things in action, or effects of the Estate of William Leslie King, deceased.

2. The finding and judgment are not sustained by evidence and are against the manifest weight of the evidence.

3. The Court erred in refusing to grant respondent's motion for judgment.

4. The amount of the finding of the Court and the judgment are excessive.

5. The finding and judgment are contrary to law.

6. The Probate Court was without jurisdiction to enter said judgment.''

Sec. 10506-67 GC provides as follows:

"Upon complaint made to the probate court or common pleas court, of any county by a fiduciary, creditor, devisee, legatee, heir or other person interested in the trust estate, or by the creditor of any devisee, legatee, heir, or other person interested in the trust estate against the fiduciary or any other person suspected of having concealed, embezzled or conveyed away or of being or having been in the possession of any moneys, goods, chattels, things in action, or effects of such estate, said court shall cite the person so suspected forthwith to appear before it to be examined on oath, touching

the matter of the complaint. The probate court shall also have power to initiate proceedings on its own motion."

The business which was carried on by W. Leslie King & Company was for personal services, to-wit, accounting and business advice as developed by the audits. The history of the development and operation of such business clearly shows that it was not the exclusive property either of King or of Calhoun. There is no evidence which in the slightest degree challenges the records kept both before and after the death of King or that would justify a finding that the business was the exclusive property of King. And likewise, the use of the name of W. Leslie King & Company indicates clearly that there was interest in such business other than that of King.

The Court by its judgment not only failed to give any consideration to the interest of each of the persons whose work, the evidence shows, contributed to the success of the enterprise, and awarded the income of the business, after the death of King, to his estate, but also failed to recognize expenses which were unchallenged by the evidence and a part of which were of exactly the same character as paid by King before his death. The death of King in no way deprived Calhoun of his personal interest in the business. His acting as attorney for the Executrix could in no way affect a then existing property interest in such business. This fact, however, does not relieve an attorney employed under such circumstances of the duty of making a full declaration of any adverse interests he may have as against the trust estate. Upon this question the record is silent.

We conclude, therefore, that the judgment is manifestly against the weight of the evidence and for that reason should be reversed and remanded for further proceedings.

The other errors complained of are so closely related to the question of whether or not the judgment is sustained by sufficient evidence that they need not be dealt with separately.

We further believe that the question of whether or not the income of the business earned after the death of the deceased, King, could be the subject of a complaint filed under §10506-67 GC is not an issue raised upon the record before us and we therefore will not consider such subject at this time.

The judgment of the Probate Court is reversed and the cause is remanded for further proceedings according to law. Exceptions. Order See Journal.

MORGAN, PJ, HURD, J, concur.